Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| ORLANDO MATOS ORTIZ MARÍA TERESA MULERO RODRÍGUEZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelantes<br><br>V.<br><br>CHRISTIAN DANIEL SUÁREZ FUENTES SU ESPOSA FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS. RAFAEL MATOS ORTIZ NILDA PURA FUENTES ORTIZ Y LA SOCIEDAD LEGAL DE GANANCIALES<br><br>Apelados | TA2026AP00455 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2022CV03055<br><br>Sobre: Daños y Perjuicios Incumplimiento de Contrato |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 25 de junio de 2026.

El 5 de mayo de 2026, compareció ante este Tribunal de Apelaciones, el señor Orlando Matos Ortiz, la señora Teresa Mulero Rodríguez, y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante y en conjunto, parte apelante), por medio de un recurso de *Apelación.* Mediante esta, nos solicita que revisemos la *Sentencia* emitida el 3 de abril de 2026, y notificada el 6 de abril de 2026, por el Tribunal de Primera Instancia, Sala Superior de Carolina. En virtud del aludido dictamen, el foro *a quo* desestimó, con perjuicio, la demanda de epígrafe, al amparo de la Regla 10.2 (5) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I**

El 15 de septiembre de 2022 la parte apelante presentó una *Demanda,* pliego que posteriormente se enmendó, sobre incumplimiento de contrato y daños y perjuicios, en contra de Christian Daniel Suárez Fuentes (en adelante, señor Suárez Fuentes), su esposa Fulana De Tal, y la Sociedad Legal de Bienes Gananciales compuesta por ambos, así como contra Rafael Matos Ortiz (en adelante, señor Matos Ortiz), su esposa Nilda Pura Fuentes Ortiz y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en adelante y en conjunto, parte apelada).[1] En el pliego, alegó que pertenecía a una familia compuesta de cinco (5) hermanos, entre estos, el señor Matos Ortiz, y que era costumbre otorgarse préstamos significativos.

En lo pertinente, indicó que en el año 1995, adquirió un apartamento en el Condominio Tiffany, en Isla Verde, Carolina, por la suma de ciento cincuenta dólares ($150,000.00). Sin embargo, en el 2006, el mismo fue ejecutado por una deuda de treinta y cinco mil dólares ($35,000.00) y adjudicada en subasta a Proyecto Feliz, Inc. Planteó que, posteriormente, pactó de forma verbal con el señor Matos Ortiz que este compraría dicha propiedad, luego la vendería para recuperar su inversión y que cualquier sobrante de dicha venta correspondería a la parte apelante. Adujo que, mientras el mercado de bienes raíces mejoraba, el señor Matos Ortiz pondría en alquiler el mencionado apartamento.

Así las cosas, arguyó que, el señor Matos Ortiz compró el inmueble por el precio de ciento sesenta y cinco mil dólares ($165,000.00), y lo puso a nombre de su sobrino político, el señor

---

[1] Apéndice del recurso, Entrada Núm. 1 y 21.

Suárez Fuentes.  La parte apelante añadió que, pactó que le pagaría al señor Matos Ortiz cinco por ciento (5%) por concepto de intereses mensuales, así como que le traspasaría cinco (5) guaguas *pickup* a su nombre. Igualmente, indicó que le pagó quince mil dólares ($15,000.00) en efectivo al señor Matos Ortiz por concepto de dichos intereses. No obstante, la parte apelante alegó que, pese a que la propiedad ha generado ingresos por alquiler, nunca recibió cantidad alguna y que la parte apelada se ha negado reiteradamente a vender el inmueble.  Indicó que, en 2016 remitió una carta al señor Matos Ortiz reiterando su deseo de proceder con la venta sin obtener respuesta. Añadió que, al momento de presentar la demanda, el apartamento continuaba inscrito a nombre del señor Suárez Fuentes y que el señor Matos Ortiz habría retenido más de doscientos mil dólares ($200,000.00).

Por estos hechos, la parte apelante alegó incumplimiento del contrato verbal y solicitó que se ordenara la venta del apartamento y la entrega del cincuenta por ciento (50%) de las ganancias obtenidas de dicho negocio. Además, reclamó una indemnización de cien mil dólares ($100,000.00) por concepto de los daños y perjuicios sufridos, producto de las angustias mentales y el alegado enriquecimiento injusto por parte del señor Matos Ortiz. Por último, peticionó el pago de no menos de veinticinco mil dólares ($25,000.00) por concepto de honorarios de abogado.

Por otra parte, la parte apelante también alegó que, en el año 2012, la parte apelada le prestó doscientos mil dólares ($200,000.00) como garantía para un negocio relacionado con la adquisición de un edificio, razón por la cual, la titularidad del inmueble se transfirió a nombre del señor Matos Ortiz. Indicó que, posteriormente, en el 2015, dicho edificio se vendió por la suma de quinientos veinte mil dólares ($520,000.00). Adujo que, una vez cubiertos los gastos del cierre y recuperada la inversión inicial de la

parte apelada, el señor Matos Ortiz le emitió dos (2) cheques por el remanente de la transacción, ascendentes a sesenta y tres mil cuatrocientos sesenta y seis dólares ($63,466.00), los cuales sostiene no pudo cobrar. Arguyó, además, que la parte apelada le entregó otros diez mil dólares ($10,000.00) en cheques igualmente incobrables. En consecuencia, planteó que dichas sumas constituyen una deuda vencida, líquida y exigible, por lo que, solicitó que se ordenara el pago correspondiente.

Posteriormente, y luego de varias incidencias procesales impertinentes pormenorizar, el 15 de julio de 2025, se celebró la *Conferencia con Antelación al Juicio*.[2] Surge de la *Minuta* de los procedimientos que las partes estipularon los siguientes hechos:

1. Los demandantes operaban un negocio de venta y entrega de gas natural.

2. Los demandantes fueron dueños del apartamento 304 del Cond. Tiffany, localizado en Carolina, Puerto Rico.

3. Los demandantes adquirieron el apartamento directo del desarrollador el 11 de enero de 1995, mediante escritura pública número 2 ante el notario Carlos E. Soltero Rigau[.]

4. El mismo día, los demandantes otorgaron hipoteca en garantía de pagaré a favor de Doral Federal Savings Bank ("Doral") por la suma de $100,000.00, con intereses al 9.5%, mediante la escritura pública número 3 ante el notario Carlos E. Soltero Rigau. Esta hipoteca gravaba el apartamento 304.

5. El 5 de agosto de 1996, los demandantes otorgaron una segunda hipoteca al portador en garantía de pagaré por la suma de $63,952.00, con intereses de 10%, mediante la escritura pública número 9 ante el notario Jairo Mellado Villareal. Esta hipoteca gravaba el apartamento 304.

6. El 7 de enero de 2004, el Registro de la Propiedad inscribió un embargo en contra de los demandantes por la suma de $2,287,000.91 a favor del Estado Libre Asociado y el Departamento de Hacienda por deudas contributivas.

7. El 5 de marzo de 2004, el Registro de la Propiedad inscribió un embargo en contra de los demandantes por la suma de $25,294.26 a favor de Empire Gas

---

[2] *Íd.*, Entrada Núm. 122.

Company, Inc., suplidor de gas del negocio de los demandantes, como parte del caso F DE2002-0968.

8. El 7 de junio de 2006, el Registro de la Propiedad inscribió una anotación de demanda de cobro de dinero y ejecución de hipoteca instada por Doral, caso número F CD2006-1312, reclamando en exceso de $100,000.00 más intereses y penalidades.

9. El 1 de junio de 2010, el Registro de la Propiedad inscribió un embargo en contra de los demandantes por la suma de $117,493.42 a favor de City Gas, Inc., suplidor de gas del negocio de los demandantes, como parte del caso F CD2002-1388 (405).

10. El apartamento 304 fue vendido en pública subasta en ejecución de Sentencia en cobro de dinero emitida por este Honorable Tribunal en el caso F CD2006-1312.

11. El 1 de octubre de 2010, Proyecto Feliz, Inc. adquirió el inmueble mediante venta judicial por la suma de $100,200.00, proceso que se hizo en la Demanda instada por Doral antes mencionada. Dicha venta fue ante la notario público Elyvette Fuentes Bonilla, escritura número 183.

12. El 25 de marzo de 2011, Christian Daniel Suárez Fuentes adquirió el apartamento 304 Proyecto Feliz, Inc. por la suma de $165,000.00, mediante escritura pública número 21, ante la notario Carmen I. Hernández Rosich. El dinero para esta compra fue puesto por los codemandados Rafael Matos Ortiz y Nilda Fuentes Ortiz.

13. El embargo a favor del Estado Libre Asociado y Departamento de Hacienda no se vino a cancelar hasta el 30 de junio de 2022, mediante instancia por prescripción presentada por el notario Ángel O. Rodríguez Correa.

14. En todo momento relevante a los hechos de este caso, los demandantes no podían operar cuentas bancarias a causa de embargos.

Así las cosas, el 7 de enero de 2026, la parte apelada presentó una *Moción de Desestimación de Demanda.*[3] En la misma, alegó que no existía controversia sobre los hechos esenciales y que, conforme a los hechos estipulados, la reclamación estaba prescrita, pues los eventos alegados se remontaban al año 2011. Negó, además, la existencia de un acuerdo verbal entre las partes y afirmó que no había evidencia documental ni testifical que sustentara dicha

---

[3] *Íd.*, Entrada Núm. 143.

alegación. La parte apelada insistió en que la compraventa del inmueble se realizó como un obsequio al señor Suárez Fuentes, sin intención de generar obligación contractual alguna. Arguyó, además, que la teoría presentada por la parte apelante implicaba un propósito de defraudar acreedores y ocultar bienes, por lo que, a su juicio, no configuraba una causa de acción válida ni un derecho jurídicamente protegible. En consecuencia, solicitó la desestimación con perjuicio de la demanda y el pago de diez mil dólares ($10,000.00) en honorarios de abogado por alegada temeridad.

Posteriormente, el 23 de enero de 2026, la parte apelante presentó una *Moción de Oposición a Moción de Desestimación.*[4] En síntesis, este alegó que su reclamación era de naturaleza contractual y, por ende, sujeta a un término prescriptivo distinto al alegado por la parte apelada. Afirmó que, dicho término había sido interrumpido en varias ocasiones mediante gestiones dirigidas a exigir el cumplimiento de lo pactado. Asimismo, adujo que, contrario a lo argüido por la parte apelada, hubo contraprestaciones entre las partes que perfeccionaron el contrato. A su vez, argumentó que, si la parte apelada sostenía que el negocio se realizó en fraude de acreedores, ello equivaldría a admitir su propia participación en tal esquema.

Así las cosas, el 6 de abril de 2026, el Tribunal de Primera Instancia notificó la *Sentencia* apelada.[5] Mediante esta, el foro primario desestimó con perjuicio, la demanda, luego de razonar que no existía una causa de acción válida ni un derecho jurídico protegible que ameritara su intervención.

Inconforme, el 5 de mayo de 2026, la parte apelante presentó el recurso de *Apelación* ante nos. En el mismo, señala la comisión de los siguientes errores:

---

[4] *Íd.*, Entrada Núm. 145.
[5] *Íd.*, Entrada Núm. 147.

### PRIMER SEÑALAMIENTO DE ERROR

Erró el Honorable Tribunal al desestimar la Reclamación basada en un CONTRATO VERBAL, sin permitir la celebración del juicio en su fondo del caso para determinar la credibilidad de ambas partes en cuanto a la existencia o no de un **CONTRATO VERBAL** y aquilatar la intención de ambas partes.

### SEGUNDO SEÑALAMIENTO DE ERROR

Erró el Honorable Tribunal al desestimar la reclamación basada en los **CHEQUES SIN FONDO**, reclamación que fue prejuzgada bajo la súbita desestimación con perjuicio de la totalidad de la reclamación, sin darle su día en Corte al Demandante-apelante aun luego de que el caso se litigara por cuatro años sin pausa, negándole el debido proceso de ley sin causa justificada.

### TERCER SEÑALAMIENTO DE ERROR

Erró el Honorable Tribunal al desestimar la reclamación en su totalidad, ignorando los criterios de la Regla 10.2 de las de procedimiento civil y la Regla 10.2 en su totalidad, la cual requiere: "Si en una moción en que se formula la defensa (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una **solicitud de sentencia sumaria** y estará sujeta a todos los trámites ulteriores provistos en la Regla 36...", sino basándose en alegaciones sin sustentarse en prueba alguna, alegaciones que son erradas, estereotipadas y acomodaticias de los demandados-apelados, quienes son demandados luego de renegar de sus obligaciones con el demandante-apelante y de darle cuatro cheques sin fondo en pago, cheques no se han podido cobrar.

Por su parte, el 3 de junio de 2026, la parte apelada presentó su *Alegato en Oposición a la Apelación*.

Siendo así, y con el beneficio de la comparecencia de ambas partes, procedemos a expresarnos.

## II

### A. Teoría General de Contratos

Los contratos son negocios jurídicos bilaterales y en nuestro ordenamiento, constituyen una de las varias formas en que las personas pueden obligarse entre sí. *Amador Parrilla v. Concilio Iglesia Universal de Jesucristo*, 150 DPR 571, 581 (2001). El derogado Código Civil de 1930, aplicable al caso de autos, disponía que las obligaciones que nacen de los contratos tienen fuerza de ley

entre las partes contratantes y deben cumplirse al tenor de los mismos. Artículo 1044 Código Civil, 31 LPRA ant. sec. 2994. Como es sabido, el contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o prestar algún servicio. Artículo 1206 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 3371.

En Puerto Rico impera el principio de la libertad de contratación. Así lo disponía el Artículo 1207 de nuestro Código Civil, 31 LPRA ant. sec. 3372, el cual establece que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que estas no sean contrarios a las leyes, a la moral, ni al orden público. *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 724 (2001). No obstante, su validez y cumplimiento no puede dejarse al arbitrio de una de las partes. Artículo 1208 Código Civil, 31 LPRA ant. sec. 3373. *Demeter Int'l v. Srio. Hacienda,* 199 DPR 706, 726 (2018); *Unisys v. Ramallo,* 128 DPR 842, 852 (1991). Es decir que los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. U.C.P.R.,* 143 DPR 610, 627 (1997).

El Artículo 1213 del antiguo Código, 31 LPRA ant. sec. 3391, establecía tres (3) requisitos que deben concurrir para que se perfeccione un contrato, estos son: (1) objeto cierto que sea materia del contrato, (2) causa de la obligación y (3) consentimiento de los contratantes. Con arreglo al Artículo 1223 del Código Civil, 31 LPRA ant. sec. 3421, pueden ser objeto de contrato todas las cosas que no están fuera del comercio de los hombres, aún las futuras, al igual que todos los servicios que no sean contrarios a las leyes o a las buenas costumbres.

De este modo, en los contratos onerosos, se ha entendido la *causa*, como la prestación o promesa de servicio de una parte a otra. Así, como elemento indispensable de todo contrato, la misma ha de existir, así como que tiene que ser lícita y verdadera. A esos efectos, se entiende que la causa de un contrato es ilícita cuando esta se opone a las leyes o a la moral. De igual forma, se ha reconocido que un contrato sin causa no produce efecto alguno. Por tanto, todo contrato sin causa o con causa ilícita es nulo. *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 188 (2016); *Piovanetti v. S.L.G. Touma, S.L.G. Tirado*, 178 DPR 745, 773 (2010). A tales efectos, "hay dos tipos de causa ilícita: 'la causa ilegal, que se opone a las leyes, y la causa inmoral, llamada también causa torpe, que se opone a la moral y las buenas costumbres". *Rosario Rosado v. Pagán Santiago*, supra, pág. 188-189, citando a *Col. Int'l Sek P.R., Inc. v. Escribá*, 135 DPR 647, 665 (1994).

Siendo así, y siempre que en ellos concurran las condiciones esenciales para su validez, así como que independientemente de la forma en que se hayan celebrado, los contratos serán obligatorios. Artículo 1230 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 3451. Es decir, que los contratos verbales tienen tanta validez como los escritos. Si dos personas reconocen la existencia de un contrato verbal, ninguna puede excusarse de cumplirlo. *Vila & Hnos., Inc. v. Owens Ill. de P.R.*, 117 DPR 825, 833 esc. 11 (1986). De este modo, en las obligaciones recíprocas, si uno de los obligados incumpliera con lo pactado, el perjudicado podrá exigir el cumplimiento de los acordado o la resolución de la obligación, así como el resarcimiento de daños y abono de intereses en cualquiera de los dos escenarios casos. Artículo 1077 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 3052.

### B. Fraude de Acreedores

Por otra parte, el derogado Código Civil de 1930, el cual es de aplicación al presente caso, regulaba el fraude de acreedores en su Artículo 1249, 31 LPRA sec. 3498, el cual establecía lo siguiente:

> Se presumen celebrados en fraude de acreedores todos aquellos contratos por virtud de los cuales el deudor enajenare bienes a título gratuito.

> También se presumen fraudulentas las enajenaciones a título oneroso hechas por aquellas personas contra las cuales se hubiese pronunciado antes sentencia condenatoria en cualquier instancia, o expedido mandamiento de embargo de bienes.

Este precepto creaba dos presunciones: (a) se presume que se celebraron en fraude de acreedores todos aquellos contratos mediante los cuales el deudor enajenó a título gratuito (donaciones); (b) se presumen fraudulentas, también las enajenaciones hechas a título oneroso, cuando contra las personas que las hacen: (i) se hubiere pronunciado sentencia condenatoria en cualquier instancia; (ii) se hubiere expedido mandamiento de embargo. JR Vélez Torres, *Curso de Derecho Civil: Derecho de Obligaciones,* Puerto Rico, 1981, T.IV, Vol. I, pág. 285. Ambas presunciones, son *iuris tantum,* es decir que, en juicio se entiende probado un hecho, mientras no se tenga prueba de lo contrario.

En lo pertinente, para que tenga lugar la presunción de fraudulenta, es necesario que le haya precedido una gestión o acto de alguien que haya podido poner al acreedor en condiciones de actuar fraudulentamente. Estas gestiones o actos positivos pueden haber sido: (a) una sentencia condenatoria; o (b) la expedición de un embargo contra los bienes del deudor. *Íd.*

### C. Moción de Desestimación

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los

fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio, y 6) dejar de acumular una parte indispensable. *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1128 (2024); *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823, 833 (2024); *Costas Elena y otros v. Magic Sports y otros*, 213 DPR 523, 533 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al*, 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013). La precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Conde Cruz v. Resto Rodríguez et. al.*, 205 DPR 1043, 1065 (2020); *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022). Cuando se presenta una moción de desestimación al amparo de la Regla 10.2(5), la desestimación pretendida se refiere a los méritos de la controversia y no a los aspectos procesales del caso. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025).

Al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Cobra Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 533; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *BPPR v. Cable Media,* supra; *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA*, supra, pág. 1049. Luego, le corresponde determinar si, a base de los hechos aceptados como ciertos, la demanda establece una reclamación plausible que

justifique la concesión de un remedio. *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 534. Si el Tribunal entiende que no se cumple con el estándar de plausibilidad, se debe desestimar la demanda, pues no debe permitir que proceda una reclamación insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Íd.,* Véase, además, R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil,* 6.a ed., San Juan, Ed. LexisNexis, 2017, pág. 307.

Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". *Cobra Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Casillas Carrasquillo v. ELA*, supra, pág. 247; *Cruz Pérez v. Roldán Rodríguez,* supra, págs. 267-268; *BPPR v. Cable Media*, supra; *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150; *Blassino, Reyes v. Reyes Blassino,* supra, pág. 833. Bajo este criterio, procederá la desestimación de la demanda si aun interpretando la reclamación de forma liberal, no hay remedio alguno disponible en el estado de Derecho. *Íd.*; *BPPR v. Cable Media,* supra.

Nuestra más Alta Curia ha reiterado que, una demanda no deberá ser desestimada a menos que la razón para solicitar el remedio no proceda bajo supuesto de derecho alguno, ni pueda ser enmendada con el propósito de subsanar cualquier posible deficiencia. *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150.

**III**

En el presente caso, la parte apelante alega que el Tribunal de Primera Instancia erró al desestimar con perjuicio la demanda de epígrafe al determinar que las alegaciones formuladas no justificaban la concesión de un remedio bajo la Regla 10.2 de las de

Procedimiento Civil, *supra.* Asimismo, cuestiona la desestimación de la reclamación relacionada con unos alegados cheques emitidos por la parte apelada que, según afirma, no pudo cobrar. Finalmente, aduce que la moción de desestimación debió atenderse conforme al mecanismo de sentencia sumaria dispuesto en la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, por entender que la parte apelada incorporó asuntos ajenos a las alegaciones. Examinados los señalamientos de error a la luz del expediente y del derecho aplicable, confirmamos la *Sentencia* apelada.

Respecto a su *primer señalamiento de error,* y conforme a la Regla 10.2(5) de las de Procedimiento Civil, *supra,* procede la desestimación de una reclamación cuando esta no expone hechos que justifiquen la concesión de un remedio. Al evaluar una solicitud de esta naturaleza, el tribunal debe dar por ciertos todos los hechos bien alegados y examinarlos de la manera más favorable a la parte demandante. Sin embargo, ello no exime a la parte promovente de cumplir con el estándar mínimo de plausibilidad requerido para sostener una causa de acción. Así, cuando de las alegaciones surge con certeza que el demandante no tendría derecho a remedio alguno bajo cualquier conjunto de hechos que pudiese probarse en apoyo de su reclamación, procede la desestimación del pleito.

En el ejercicio de nuestra función revisora, evaluamos la *Demanda* presentada por la parte apelante conforme al estándar antes expuesto, así como los hechos estipulados por ambas partes y acogidos por el foro primario. De dicho análisis concluimos que las alegaciones no establecen una reclamación susceptible de remedio. En esencia, la parte apelante sostiene que entre esta y la parte apelada se perfeccionó un contrato verbal. Ante ello, corresponde examinar si concurrían los requisitos indispensables para la validez de un contrato.

Según surge de las alegaciones y de los hechos estipulados, la parte apelante fue objeto de múltiples embargos desde el año 2004 como consecuencia de una deuda millonaria. Como resultado de ese proceso, el inmueble objeto de controversia fue ejecutado y adjudicado en subasta a Proyecto Feliz, Inc. Además, las partes estipularon que la parte apelante estuvo impedida de manejar sus cuentas bancarias hasta el año 2022, cuando finalmente se dejó sin efecto el embargo.

Dentro de ese contexto, la parte apelante aduce que el señor Matos Ortiz acordó adquirir el apartamento de Proyecto Feliz, Inc. con el propósito de revenderlo una vez mejoraran las condiciones del mercado inmobiliario, recuperar la inversión realizada y entregarle a aquella cualquier ganancia obtenida mediante dicha transacción. De igual forma, alegó que, mientras el inmueble permaneció arrendado, el señor Matos Ortiz se obligó a entregarle una parte de los cánones de arrendamiento percibidos y que incumplió con tal obligación.

Sin embargo, aun aceptando como ciertas tales alegaciones, coincidimos con la determinación del foro apelado. Al evaluar los hechos antes esbozados, es nuestra apreciación que el alegado acuerdo tenía como fin burlar el proceso de embargo en el cual se encontraba transcurriendo la parte apelante. Por tanto, es evidente que, la causa del supuesto contrato no podía reputarse lícita. Siendo la licitud de la causa un requisito indispensable para la existencia y validez del vínculo contractual, el negocio descrito por la propia parte apelante resultaría nulo e incapaz de generar obligaciones exigibles. Por ello, concluimos que la demanda no exponía una causa de acción que justificara la concesión de remedio alguno.

En cuanto al *segundo señalamiento de error*, la parte apelante argumenta que el Tribunal de Primera Instancia erró al desestimar su reclamación en cobro de dinero relacionada con unos alegados

cheques emitidos por la parte apelada que no pudieron ser cobrados. No le asiste la razón. *Veamos.*

Aun interpretando las alegaciones de la manera más favorable a la parte apelante, estas resultan insuficientes para sostener la referida causa de acción. Si bien se acompañaron copias de los cheques objeto de controversia, el expediente carece de alegaciones o evidencia que permitan inferir que estos fueron efectivamente presentados al cobro y devueltos por insuficiencia de fondos o por cualquier otra razón que impidiera su negociación. Del mismo modo, la *Demanda* no expone hechos concretos que establezcan la fuente de la obligación de la parte apelada de emitir o satisfacer tales pagos. En particular, aunque la parte apelante vincula algunos de los cheques al alegado sobrante obtenido de la venta de un inmueble, esta no formula alegaciones suficientes que permitan concluir que existía una obligación jurídica exigible. Respecto a los otros cheques cuya cuantía asciende a diez mil dólares ($10,000.00), el pliego tampoco identifica el origen de la supuesta deuda ni las circunstancias que justificarían su cobro. Ante tales deficiencias, concluimos que el Tribunal de Primera Instancia actuó correctamente al desestimar dicha reclamación.

Por último, en su *tercer señalamiento de error,* la parte apelante sostiene que la moción de desestimación debió tratarse como una solicitud de sentencia sumaria. Justipreciamos que tampoco le asiste la razón.

Ciertamente, cuando se presenta una moción para desestimar bajo el aludido estatuto y "se expusieren materias no contenidas en la alegación impugnada y éstas no fueren excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a

dicha moción bajo dicha regla". 32 LPRA Ap. V, R. 10.2; *Luán Investment Corp. v. Rexach Construction Co.*, 152 DPR 652, 663-664 (2000). A tales efectos, "la conversión de una moción de desestimación en una de sentencia sumaria, a tenor con esta Regla, puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, someten materia que no formó parte de las alegaciones, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios". *Torres Capeles v. Rivera Alejandro,* 143 DPR 300, 309 (1997).

En el caso ante nuestra consideración, surge del expediente que la parte apelada fundamentó su solicitud de desestimación en los propios hechos estipulados por las partes y en las alegaciones contenidas en la Demanda. No incorporó planteamientos fácticos nuevos ni acompañó prueba adicional que obligara al foro primario a evaluar la controversia bajo el mecanismo de sentencia sumaria. De igual manera, la parte apelante tampoco presentó evidencia documental con su oposición que provocara tal conversión. Por consiguiente, concluimos que el Tribunal de Primera Instancia actuó correctamente al resolver la controversia al amparo de la Regla 10.2 de las de Procedimiento Civil, *supra.*

**IV**

Por los fundamentos antes esbozados, se *confirma* la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones